UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of IES COMMERCIAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CONTINENTAL INSURANCE COMPANY, INC., LIBERTY MUTUAL INSURANCE COMPANY, and GRUNLEY CONSTRUCTION CO., INC., <br><br> Defendants/Intervenor Defendant & Counterclaimant. | Civil Action No. 11-0985 (ESH) |

## MEMORANDUM OPINION AND ORDER

Plaintiff IES Construction Co., Inc. ("IES"), a subcontractor of Grunley Construction Co., Inc. ("Grunley") in the performance of a government contract, initiated this action for damages arising from that agreement. In connection with the contract between IES and Grunley, a payment bond was issued by Grunley, as principal, and Continental Insurance Company, Inc. and Liberty Mutual Insurance Company, as sureties. In the instant action, IES initially sued Continental Insurance Company, Inc. and Liberty Mutual Insurance Company. Defendant Grunley subsequently intervened as a defendant and counterclaimant. Before this Court is Grunley's motion to dismiss the second count of IES' complaint on the grounds that it fails to state a claim under the Prompt Payment Act ("PPA"). 31 U.S.C. §§ 3901-3907. As explained herein, the Court agrees.

### BACKGROUND

In September of 2009, Grunley entered into a contract with the United States to perform design-build work in certain utility tunnels near the U.S. Capitol Power Plant in Washington,

D.C. (Compl. ¶ 6.) In January of 2010, Grunley subcontracted with IES to perform electrical work required by Grunley's AOC Contract for a fixed price of $118,600. (Compl. ¶ 7.) In connection with the subcontract, Grunley, as principal, and Continental Insurance Company, Inc. and Liberty Mutual Insurance Company, as sureties, issued a payment bond pursuant to the requirements of the Miller Act. 40 U.S.C. §§ 3131-34. During the performance of this contract, IES and Grunley experienced changes in the work requirements as well as delay, which led to a dispute between them regarding payment. (Compl. ¶¶ 10- 26.)

In May 2011, IES initiated the present action, asserting a claim under the Miller Act against Grunley's sureties– Continental Insurance Company, Inc. and Liberty Mutual Insurance Company. Thereafter, Grunley intervened as a defendant and asserted a counterclaim against IES, claiming entitlement to damages for additional costs incurred as a result of IES' breach of subcontract. (Mot. to Intervene as a Def.) IES, in turn, sued Grunley for breach of contract (Count I), seeking damages, and for violation of the PPA (Count II). With respect to Count II, IES seeks "interest, penalties, and attorney's fees provided by the [PPA]." (IES' Answer to Countercl. and Countercl. Against Grunley Construction Company, Inc. at 16.)

## ANALYSIS

Grunley has moved to dismiss Count II under Rule 12(b)(6), arguing that (1) there is no private right of action under the PPA, (2) the payment-related dispute between Grunley and IES makes the PPA inapplicable, and (3) the PPA would not, in any event, compel the payment IES seeks because the U.S. has not paid those funds to Grunley. (Mot. to Dismiss Countercl. Count II ("Def.'s Mot.").)

The PPA was enacted in 1982 in an effort to provide the federal government with an incentive to pay government contractors on time by requiring agencies to pay penalties—in the

2

form of interest—on certain overdue bills.  Pub. L. No. 97-177, 96 Stat. 85 (1982); *see generally* H.R. Rep. No. 97-461 (1982).  In 1988, the PPA was amended to include explicit provisions applicable to subcontractors. Prompt Payment Act Amendments of 1988, Pub. L. No. 100-496, 102 Stat. 2455 (1988); H.R. Rep. No. 100-784 (1988).

Under the amended PPA, prime contractors with the federal government are required to include in agreements with subcontractors terms that protect against late payments.  31 U.S.C. § 3905.  Specifically, prime contractors must insert "a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract." *Id.* at § 3905(b)(1).  The PPA further obligates prime contractors to insert "an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection." *Id*. at § 3905(b)(2).  Absent from the PPA is any explicit provisions for subcontractor enforcement if the prime contractor fails to make timely payment. *See generally* 31 U.S.C. § 3905.

Moving to dismiss that count, Grunley argues that the PPA does not create a private right of action, and to support this position it cites to several cases from other jurisdictions that have adopted this view.[1]  (Def.'s Mot. at 5-7.)  Though these decisions are not binding on this Court, the apparently unanimous conclusion that the PPA does not create a private right of action is nonetheless persuasive.  *See United States* ex rel. *L&W Supply Corporation  v.  Dick*

---

[1]These decisions include: *In re Thomas*, 255 B.R. 648, 654 (Bankr. D.N.J. 2009); *United States* ex rel. *King Mountain Gravel, LLC v. RB Constructors, LLC,* 556 F. Supp. 2d 1250, 1252-53 (D. Colo. 2008); *U.S.* ex rel. *Virginia Beach Mech. Servs., Inc. v. SAMCO Constr. Co*., 39 F. Supp. 2d 661 (E.D. Va. 1999); *Transamerica Premier Ins. Co. v. Ober*, 894 F. Supp. 471 (D. Me. 1995).

3

*Corporation*, No. 3:08cv56, 2009 WL 1139569, at * 1 (N.D. Fla. Apr. 27, 2009) ("All of the authority which the defendants have cited, or the court has located, hold there is no private right of action under the [Prompt Payment] Act."); *C&H Contracting of MS, LLC v. Lakeshore Engineering Services, Inc.*, No. 1:07cv700, 2007 WL 2461017, at *1 (S.D. Miss. Aug. 24, 2007) ("The few courts addressing the matter have found that there is no private right of action between contractors under the Prompt Payment Act."). IES counters that these decisions are non-binding and urges this Court to find an implied right of action in light of the congressional purpose for enacting the PPA. (IES' Brief in Opposition to Grunley's Motion to Dismiss ("Pl.'s Opp'n.") at 3-4.) Although IES arguably has offered ways to distinguish the cases on which Grunley relies, there is no legal support cited to support the recognition of an implied right of action. (*Id.*)

The Supreme Court has directed courts to be cautious when recognizing a private right of action, explaining that, without clearly-demonstrated intent, "a claim does not exist and courts may not create one." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). This holds true "no matter how desirable [the creation of the claim] might be as a policy matter or how compatible with the statute." *Id.* In *Sandoval*, the Court found that the statute at issue imposed a clear directive, but did not create a private remedy. *Id*. at 288-90 (focusing on the dearth of "rights-creating" language). Similarly here, neither the text of the PPA nor the legislative history reveal an intent to create a private right of action. *See generally* 31 U.S.C. §§ 3901- 3907; Prompt Payment Act Amendments of 1988, Pub. L. No. 100-496, 102 Stat. 2455 (1988); Pub. L. No. 97-177, 96 Stat. 85 (1982); H.R. Rep. No. 100-784 (1988); H.R. Rep. No. 97-461 (1982); *Hearings Before a Subcomm. of the Comm. on Government Operations on H.R. 4709 to require the Federal Government to Pay Interest on Overdue Payments, and for Other Purposes*, 97th Cong. (1982). Instead, the statute and implementing regulations show that the enacting Congress

envisioned the PPA's protections to be enforced in the same manner as other contractual disputes. *See* 5 C.F.R. § 1315.16(a); *see also Roth v. District of Columbia Courts*, 160 F.Supp.2d 104, 106 (D.D.C. 2001).

IES responds that the legislative history shows that Congress meant to protect subcontractors and that the PPA would be essentially toothless without a self-executing enforcement provision. (Pl.'s Opp'n at 3, 6.)  This argument, however, is unconvincing. First, the multitude of statutes that provide directives without accompanying private remedy clauses belies IES' claim. *See, e.g.*, *Sandoval*, 532 U.S. 275 (finding no private cause of action created by section 602 of the Civil Rights Act of 1964); *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754 (1981) (finding no private cause of action created by the Davis-Bacon Act). Second, it makes little sense to assume, as a default, that statutory directives create private rights of action because doing so could diminish legislators' enthusiasm for creating standards for improved conduct.  Ultimately, for these reasons and the reasons stated by the other courts to have considered the matter (*see supra* note 1), this Court finds that the PPA does not create an implied right of action.[2]

## CONCLUSION

For the foregoing reasons, the Court grants defendant Grunley's motion to dismiss Count

---

[2] The Court is also persuaded that the PPA only applies to payments "for satisfactory performance" and that is not the case here since the payments are disputed. However, given the Court's conclusion that there is not private right of action, it need not decide this issue, nor does it have to address Grunley's argument that the PPA does not compel it to pay interest on an amount that the federal government has not paid to Grunley.  (Def.'s Mot. at 9-10.)

II of IES' complaint against Grunley.

                                            /s/
                         ELLEN SEGAL HUVELLE
                         United States District Judge

Date:   September 30, 2011